Anthony D. Prince (SBN # 202892)
General Counsel, California Homeless Union
Law Offices of Anthony D. Prince
2425 Prince Street, Ste. 100,
Berkeley CA, 94705
Ph. 510-301-1472
Email: princelawoffices@yahoo.com

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| | Case No.: |
| WOODMARK TENANTS UNITED; ALYSSA AGUIRRE, ANANDA AHEARN, GABRIELA R. ORTIZ ALONSO, GLENDA BARTON, VINCENT BARTON, ELIZABETH GALLOCK, TRINELL MEYER, MELISSA PAGE, GENEVIEVE PERKINS, SANDRA RUSSELL, KARI SNYDER, AMANDA QUILLIN and DOES 1-30,<br><br>        Plaintiffs,<br><br>    vs.<br><br>THE PACIFIC COMPANIES,<br><br>        Defendant. | **COMPLAINT AGAINST DEFENDANT FOR FRAUD,  ATTEMPTED FRAUD, SOLICITATION FOR FRAUD; FRAUDULENT INDUCEMENT OF CONTRACT (LEASE); NEGLIGENT AND INTENTIONAL MISREPRESENTATION; VIOLATIONS OF: FEDERAL FAIR HOUSING ACT; CALIFORNIA TENANT PROTECTION ACT (AB 1482); CITY OF SEBASTOPOL TENANT PROTECTION ORDINANCE (MUNICIPAL CODE CHAPTER 9.36); AMERICANS WITH DISABILITY ACT (ADA); CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT (FEHA); INTENTIONAL AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS and APPLICATION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION TO HALT DISPLACEMENT OF MEMBERS OF WOODMARK TENANTS UNITED AND OTHER RESIDENTS OF WOODMARK APARTMENTS**<br><br>**JURY TRIAL DEMANDED** |

## INTRODUCTION

1.      This action arises from Defendant The Pacific Companies ("TPC") deliberate misrepresentation of tenancy eligibility requirements put forth by a federal agency in order to induce Plaintiffs to enter into residential lease agreements, followed by Defendant's subsequent attempt to illegally displace those same tenants based on conditions Defendant knew existed at the time of leasing but affirmatively misrepresented and concealed from Plaintiffs.

2.      Defendant's actions constitute fraud, unlawful tenancy practices, and violations of California and municipal law. Defendant's conduct stems from an attempt to defraud the federal government by receiving $1,807,303 in annual federal tax credits for ten years through the "Off-Farm Labor Housing" program of the United States Department of Agriculture. Defendant preyed upon two vulnerable populations for financial gain.

3.      First, the low-income area farm workers and their families who were intended to benefit, but did not, from the Program by receiving priority consideration for units at Woodmark Apartments after TPC abandoned its half-hearted and inadequate "efforts" to reach out to Sonoma County's agricultural worker families.

4.     Secondly, TPC deceived and now seeks to displace the non-farmworker low-income families who Defendant used instead to populate the development until its fraudulent scheme was laid bare by local media.

## JURISDICTION AND VENUE

### Jurisdiction

5.     This Court has federal question jurisdiction under 28 U.S.C. § 1331 due to claims that stem from Defendant's violations and attempted violation of various provisions of the federal False Claims Act, 31 U.S.C. §§ 3729-3733 including, but not limited to including, presenting or

causing the presentment of a false claim for payment or approval, 31 U.S.C. §§3729(a)(1)(A); making, using or causing others to make or use a false record or statement that is material to a false or fraudulent claim, 31 U.S.C. U.S.C. §§ 3729(a)(1)(B); submission of false or misleading certifications regarding outreach, marketing, or intended tenants.

6.      Also, this action arises in substantial part, and, accordingly, this Court has jurisdiction based on Defendant's conduct in connection with federally funded housing programs governed by the United States Department of Agriculture and involves substantial questions of federal law relating to compliance with federal program requirements.

7.      In addition, this Court has federal question jurisdiction under the federal Fair Housing Act, 42 U.S.C. § 3604 by way of Defendant's hindering access for protected classes, including inadequate outreach to eligible populations; and violations of Sections 514/516 of the United States Department of Agriculture (USDA) "Off-Farm Labor Housing Statute ("Off-FLA") specifically, various violations of Code of Federal Regulation, Title 7-Agriculture, Subtitle B - Regulations of the USDA, Title 7, Chapter XXXV, Part 3560.

8.      Finally, this Court has diversity jurisdiction because the main office, headquarters and nerve center of Defendant The Pacific Companies ("TPC") is located entirely within the state of Idaho while all plaintiffs are residents of California. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

**Venue**

8.      Venue is proper in this District under 28 U.S.C. § 1391 because the events giving rise to these claims occurred in Sebastopol, California, which is located in Sonoma County, and falls within this district.

**Intradistrict Assignment**

9.     Because this lawsuit arose in Sonoma County, it should be assigned to the San Francisco/Oakland Division of this Court.

**DEMAND FOR JURY TRIAL**

## SUMMARY

10.     Plaintiffs Trinell Meyer, Genevieve Perkins, Sandra Russell, Melissa Page, Glenda Barton, Elizabeth Gallock, Kari Snyder, Gabriela Ortiz Alonso, Alyssa Aguirre, Amanda Quillin, and Ananda Ahearn, are all residents of Woodmark Apartments, the residential property at issue, which is located in Sebastopol, California.

11.     All Plaintiffs are low or very low-income residents. At the time they inquired about becoming Woodmark tenants and subsequently signed one-year leases, all plaintiffs informed employees of Defendant TPC's contracted agent for leasing and property management Aperto Property Management, Inc. that they (plaintiffs) *were **not*** farmworkers or otherwise qualified for priority consideration under the USDA's Off-Farm Labor Housing program.  Nevertheless, they were all informed verbally and in writing by Aperto Management personnel that they were eligible to apply for and sign leases to become Woodmark tenants.

12.     At no time were plaintiffs ever informed either before or after they signed leases that federal regulations governing the Off-FLH program, they could be displaced by farmworker applicants or persons who were otherwise eligible to become tenants under the OFLH program. Neither was there any term, clause or mention in their leases of the possibility of being dispossessed of their apartments.

13. As discussed in detail below, plaintiffs and each of them reasonably relied to their detriment on the above-described assurances by Defendant's leasing and management contractor Aperto regarding their tenancy. It was not until September, 2025 that they learned that they had been deceived after receiving phone calls and subsequent notices informing them that they had to leave Woodmark in order for Defendant TPC to "come into compliance" with the Off FLH program or, alternatively, sign new leases which would have required them to falsely describe themselves as farmworkers or members of farmworker families.

14. To expedite the displacement of the approximately 40 then existing tenants, including Plaintiffs, Defendant "offered" cash payments of either $10,000 or $5,000 depending on how quickly residents would leave, and the "opportunity" to apply on a first-come, first-served basis, with no assurance of acceptance, for apartments in "sister" complexes also owned by TPC outside the City of Sebastopol.

15. However, those who accepted such "assistance" were made to sign unconscionable "Voluntary Termination Agreements" waiving any and all constitutional and statutory federal, state and local City of Sebastopol protections and rights belonging to tenants and/or members of protected classes and releasing TPC, its agents from any and all known and unknown legal claims including "fair housing violations", discrimination "of any kind", any "claims of emotional distress", "failure to provide any reasonable [disability] accommodations", "violation of Resident's civil rights or rights to organize or petition" and requiring those accepting the "assistance" to refrain from "disparage[ing]" or attempting "in any way to injure the reputation of the Landlord or any of their respective agents, principals, employees, or partners of Landlord."

16. Those who signed these unlawful contracts of adhesion had no bargaining power whatsoever and, fearing reprisals, are for now, only identified in this lawsuit as John Doe

plaintiffs. But after watching all of their former neighbors cleared out of the Woodmark Apartments, a defiant group of residents, the individually identified plaintiffs in this lawsuit, decided to fight back. They are seniors, persons with disabilities and a majority are low-income, mostly single-mothers who, unable to afford market-rate apartments in Sebastopol, face eviction, homelessness and other foreseeable, imminent and irreparable harm.

17.     Having been served with eviction notices, they are now mere days away from being sued for unlawful detainer by TPC.

## PARTIES



18.     Plaintiff **WOODMARK TENANTS UNITED** is an unincorporated association of current and former tenants of the Woodmark Apartments in Sebastopol, California formed on or about September, 2025 for the purpose of collectively resisting wrongful displacement and eviction and prosecuting legal claims against property owner Defendant The Pacific Companies.

19.     Plaintiff **ALYSSA AGUIRRE** is a disabled, single mother of a minor child. Her child is currently enrolled in the Sebastopol school district and is still grieving the death of her father. Ms. Aguirre has been diagnosed with serious disabilities and  since facing displacement, Ms. has been unable to eat, unable to focus at work, unable to sleep, has been suffering from aggravation of her disabilities.



20.     Plaintiff **ANANDA AHEARN** is a single mother of two minor children who are both enrolled in the public school district of Sebastopol. Ms. Ahearn has been diagnosed with serious disabilities and has previously experienced homelessness as the result of a wrongful eviction. Ms. Ahearn has suffered the loss of her relationship and exacerbation of her preexisting conditions since facing displacement by Defendant.

21.     Plaintiff **GABRIELA ORTIZ ALONSO** is a pre-nursing student and the single mother of a minor child. Her child is currently enrolled in the school district. Ms. Ortiz Alonso suffers from serious disabilities and has previously experienced homelessness. She is a first generation American, the granddaughter of a farm worker, and a third generation Sebastopol resident.

22.     Plaintiff **GLENDA BARTON**, is an 80-year-old, disabled widow who lives with her

  adult son, plaintiff **VINCENT BARTON**. Ms. Barton previously worked as secretary for multiple agencies across the state, including UCSF, UC Berkely, the California Public Utilities Commission, and multiple CA public school districts until she had to retire due to disability. Ms. Barton has previously experienced homelessness due to the loss of income from her husband's death and her disability.

23. Plaintiff **ELIZABETH GALLOCK** suffers from a debilitating kidney disease, and is the only caretaker for her husband, Brad Gallock, who is also afflicted with serious disabilities. The shelter, stability, and safety that Woodmark Apartments provides is a crucial element of their ability to care for themselves. Ms. Gallock and her husband have suffered extreme anxiety and stress since facing eviction, which has worsened their preexisting conditions. If evicted, Ms. Gallock is facing homelessness and even death as the result of a probable inability to care for her life-threatening, preexisting condition.

24. Plaintiff **TRINELL MEYER** is the single parent of an 18-year old son. Ms. Meyer works full-time as a case manager at a nonprofit and suffers from serious disabilities. If evicted, Ms. Meyer will be unable to afford anything more than a studio apartment which will aggravate and exacerbate her disabilities and those of other family members.



25. Plaintiff **MELISSA PAGE** is the single mother of a 9-year-old, disabled child. Ms. Page became a tenant of Woodmark Apartments after surviving domestic violence, which resulted in



periods of homelessness and housing insecurity for her and her minor child. Ms. Page is currently a student and provides elder care at a senior housing development that is located across the street from Woodmark Apartments. Ms. Page expresses that her minor, disabled child has experienced extreme emotional hardship since facing eviction.

26. Plaintiff **GENEVIEVE PERKINS** is a 53-year-old woman who became disabled after a severe spinal injury and has previously experienced homelessness. She currently suffers from a

debilitating neurological disability. Her mother lives in the senior living facility that is located across the street from Woodmark Apartments and Ms. Perkins is her caretaker. The stress of the impending eviction has caused her pain to increase. Ms. Perkins' emotional suffering is so great that she sought out farm work to halt her displacement, but her disability has prevented her from doing so.



27.    Plaintiff **SANDRA RUSSELL** is a 78-year old, retired RN-Nurse Manager. She is a long-term resident of Sebastopol and has lived there, close to her daughter and her family, for 16 years. Ms. Russell has suffered from depression and physical malaise since Defendant initiated the eviction process. Ms. Russell has no other housing options and, if evicted, will be facing homelessness.

28.    Plaintiff **KARI SNYDER** is the 50-year-old, single mother of two minor children who are currently enrolled in the Sebastopol School District. Ms. Snyder's youngest child has been attending his current school since kindergarten and is reliant on the services they offer and their knowledge of his situation, including his teacher and the  school counselor. The family is reliant on the children's ability to walk or bike to school.



29.    Plaintiff **AMANDA QUILLIN** is a single mother of three minor children. Ms. Quillin and her children have previously experienced homelessness and sustained emotional trauma from the experience. Since facing displacement Ms. Q and her family have experienced extreme emotional distress.

# FACTUAL ALLEGATIONS

## A. USDA Program Requirements

30.    Defendant accepted federal funding through the United States Department of Agriculture ("USDA") Off-Farm Labor Housing Program for its housing development, Woodmark Apartments, which imposes specific eligibility requirements prioritizing occupancy by farmworkers.

31.    Clause No. 3 of the addendum, "Eligibility Requirement," provides as follows: "Resident understands and agrees that, in order to remain eligible for housing at the property, their household must include a domestic tenant or co-tenant farm laborer, a retired domestic farm laborer, or a disabled domestic farm laborer."

32.    Clause No. 5, "Farm Labor Employment," requires in pertinent part that "The household must receive a substantial portion of income from farm labor employment."

33.    Prior to lease execution, as documented by the media, Defendant acknowledged the existence of farmworker eligibility requirements numerous times in their own outreach materials, and in written and oral communications with prospective tenants.

## B. Leasing Conduct

34.    The Woodmark Apartments were completed in September of 2024. From the date of completion until on or about January 2024, the units and the parking lot of Woodmark Apartments were observed to be empty.

35.    On or around December of 2024, Defendant represented to Plaintiffs that eligibility requirements had been modified to include all low-income applicants, even though no actual change to the requirements had occurred.

36.     By way of example, Aperto Management told Plaintiff Amanda Quillin on November 26, 2024 that "the developer has decided not to go that route anymore at this time" with regards to eligibility based on farm-worker status.

37.     On or around December of 2024, Defendant began to lease units to Plaintiffs, who did not meet those eligibility requirements. At the time of signing, Defendant failed to disclose to any Plaintiffs that TPC had sought and either been granted or denied a waiver to permit non-eligible tenants to lease apartments.

38.     At no point during or prior to lease execution did Defendant disclose to any of the Plaintiffs that Plaintiffs' tenancy was contingent upon USDA approval or subject to future displacement based on the eligibility criteria that was always known to the Defendant before and during the leasing process.

**C. Post-Leasing Conduct**

39.     In January 2025 Sebastopol Times reporter Laura Hagar wrote an article exposing that Woodmark Apartments had been fully leased to non-farmworkers.

40.     As documented in a subsequent article of the Sebastopol Times that was published on September 4, 2025, a complaint was filed with the United States Department of Agriculture regarding noncompliance with program requirements.

41.     On or about September 2, 2025, Defendant verbally notified all Plaintiffs that they were facing displacement.

42.     On September 16, 2025, Defendant contacted Plaintiffs in writing and reiterated that they would face displacement due to failure to meet USDA eligibility requirements. In this same letter, Defendant offered relocation options. Plaintiffs were only given the choice to move to one

of two of Defendant's sister properties, "if there was availability," which are located in Santa Rosa and Rohnert Park. Upon reason and belief, the specific properties offered did not have enough available units for all non-farm worker tenants and were explicitly described by Defendant as "first come first served."

43.     Also, in this same letter, tenants were told that if they accepted the relocation option, their current rent would be honored for the first 12 months and then be subject to maximum allowed rental increases in accordance with the Tax Credit Allocation Committee (TCAC) and LIHTC rules.

44.     In this same letter, Defendant offered compensation. Compensation was time sensitive: tenants were offered up to $10,000 to vacate by the end of October 2025, or $5,000 by the end of November 2025. In addition, Defendant admitted in writing that they entered into lease agreements without having obtained required authorization or waiver from the USDA. Defendant stated that they had hoped to obtain such a waiver but were denied. However, documents obtained by plaintiffs appear to show that USDA never received such a request from Defendant.

45.     On January 17, 2025, Laura Hagar Rush of the Sebastopol Times wrote an article with factual claims as to why Defendant's original outreach to farmworkers was not adequate.

46.     On or around January 10, 2026, demand letters were sent from the Law Offices of Anthony Prince on behalf of Plaintiffs requesting that this dispute be resolved informally in a manner that would be satisfactory to all parties. Defendant did not respond.

47.     On November 3, 2025, County Supervisor Lynda Hopkins sent a letter urging Defendant to explore solutions that would prevent or delay the eviction of Plaintiffs. Ms. Hopkins sent

another letter on November 14th, 2025, emphasizing the need for urgent intervention on behalf of Plaintiffs.

48.     On December 4, 2025, Denise Carter, a representative of Defendant The Pacific Companies, sent Ms. Hopkins an email stating that the USDA loan had not yet closed.

49.     On November 4, 2025, Sebastopol City Council passed Chapter 9.36, Just Cause Eviction and Tenant Relocation, whose purpose is to extend tenants protections within city limits. The executive summary of council meeting in which the first reading of the ordinance took place specifically states that these protections were extended in direct response to the unjust situation Plaintiffs are facing.

50.     On November 19, 2025, Sebastopol elected officials sent Defendant a letter expressing their concern for the non-farm worker, low-income residents of Woodmark apartments. They requested that Defendant pause the eviction until reasonable housing options could be secured for the Plaintiffs. However, despite the pleas of elected officials, Defendant unilaterally proceeded with the eviction process, serving all tenants with a formal notice on February 2, 2026, with a stated eviction date of April 24, 2026.

   **D. Consequences of Defendant's Conduct**

51.     Plaintiffs include elderly individuals, disabled individuals, families with children, and other vulnerable populations who require proximity to local support systems and/or proximity to employment and/or who have children enrolled in the Sebastopol school district. Many Plaintiffs have health conditions that have a treatment protocol which is reliant on the stability and proximity that their current location affords them and have no place to which they can relocate.

52.    As a result of Defendant's actions, Plaintiffs have already suffered damages, incurring emotional distress, negative health consequences, and financial hardship as a direct result of Defendant's actions.

53.    If eviction is to proceed, Plaintiffs will face irreparable harm in the form of loss of income, emotional distress, and further, irreversible deterioration of physical and mental pre-existing conditions. Disabled Plaintiffs will lose their support systems, which are an essential part of their care-plan. At least one disabled Plaintiff's health condition is so dire that she will be facing death. Minor children will suffer disruption in their education and will lose the support system provided by their peers and other adults, such as school counselors.

## FIRST CAUSE OF ACTION

### Fraud in the Inducement

Plaintiffs reallege and incorporate by reference Paragraphs 1- 53 above.

54.    Defendant repeatedly and knowingly misrepresented and omitted material facts regarding tenancy eligibility when they informed clients that eligibility was not limited to farmworkers and agriculture-related families. These material misrepresentations took place through both oral and written communication via in-person dialogue, phone calls and emails.

55.    Defendant admits in writing that it knowingly entered into a lease agreement with non-qualifying tenants before it had obtained permission to do so from the USDA. In a letter dated September 16, 2025, Aperto Management clearly states, "We had hoped we could obtain a waiver of this requirement for existing households, but the USDA has denied our request." It is our knowledge and belief that Defendant did not, in fact, even apply for a waiver, opting to instead off-load their failure to comply onto Plaintiffs.

56.    In addition, all plaintiffs allege that they were never told that their continual tenancy was dependent on a waiver that had not yet been obtained and were unaware that they would face displacement if Defendant failed to do so. The failure to disclose the existence of and true status of the waiver is a material omission of fact. Defendant intended Plaintiffs to rely on those misrepresentations when Plaintiffs signed the lease agreements.

57.    Plaintiffs reasonably relied on those representations in entering into lease agreements, as they would not have entered into lease agreements if they were aware they could face eviction at any time. Additionally, it has been accurately documented in the media that Defendant did not launch an adequate outreach program advertising its available housing units to vulnerable farm workers. Consequently, Defendant were unable to obtain an adequate number of eligible applicants to fill the Woodlaw units in a timely manner.

58.    Instead of correcting these failures through a more robust outreach program, Defendant knowingly committed fraud in the inducement by intentionally deceiving the current tenants in order to coerce them to enter into a lease agreement and rapidly fill the remaining empty units. Upon knowledge and belief Defendant did so for financial gain.

## SECOND CAUSE OF ACTION

### Fraud by Way of Negligent and Intentional Misrepresentation

Plaintiffs reallege and incorporate by reference Paragraphs 1- 53 above.

59.    Defendant willingly made false statements to all Plaintiffs regarding their eligibility for Phase 1 of their housing program and regarding tenancy when they did not provide the required supplementary document stating that tenancy was conditional for non-farm workers. It is well

documented that Defendant knew those statements were false before and during the leasing process.

60.     Plaintiffs, and each of them,  relied on those statements to their detriment by discontinuing other efforts to find affordable housing, making expenditures to furnish, decorate and make improvements to units, enrolling or continuing their children in local Sebastopol schools with the expectation that they would remain until graduation. All Plaintiffs are facing eviction, which puts all Plaintiffs at risk of suffering financial hardship, loss of income, housing insecurity, homelessness, and loss of proximity to support systems. Several Plaintiffs are additionally facing significant negative health consequences and even death.

## THIRD CAUSE OF ACTION

**Violation of Sebastopol Municipal Code Chapter 9.36 and California Tenant Protection Act – AB 1482**

Plaintiffs reallege and incorporate by reference Paragraphs 1- 53 above.

61.     Municipal Code Chapter 9.36 expands the protections afforded under AB 1482 to include tenants residing in regulated units in Sebastopol that have 40 units or more "regardless of date of construction and commencing on the first date of tenancy."

62.     Woodmark Apartments has 48 units and is therefore subject to the protections guaranteed under AB 1482. Under AB 1482, the mere expiration of a lease or rental agreement is not a "just cause" to terminate a tenancy. Defendant did not meet the legal requirements for a no-fault eviction, no owner or member of owner's  family is moving into the unit, there is no intent to demolish or substantially remodel the property, the landlord is not withdrawing the unit from the market, and the owner is not complying with a government order or local law that requires the Plaintiffs to vacate.

63. Defendant additionally failed to comply with the relocation payment requirements under AB 1482. Also, the lease agreements contain material omissions, including failure to identify authorized persons for service of process and notices. The lease agreements do not comply with statutory disclosure requirements under California law.

64. In addition, Defendant's justification for displacing Plaintiffs relies on USDA program eligibility requirements. However, those requirements were not operative at the time Plaintiffs entered into their lease agreements because the USDA loan associated with the project had not yet closed.

65. Chapter 8, Section 2 (8.1) of the USDA Multi-Family Housing Loan Origination Handbook Loan states "Once the loan is closed, the applicant becomes a borrower. Borrowers are then subject to program requirements regarding project management, occupancy, rents, subsidies, and financial management.

66. Defendant was aware, or should have been aware, that USDA eligibility restrictions were not yet in effect, and nevertheless invoked those requirements as a basis for terminating Plaintiffs' tenancy.

67. Defendant's reliance on inapplicable program requirements further demonstrates that their stated basis for eviction is pretextual and unlawful.

## FOURTH CAUSE OF ACTION

**False Claims Act and Attempted Fraud 31 USC 3729 – 3733.**

Plaintiffs reallege and incorporate by reference Paragraphs 1-53 above.

68. All previously stated causes of action arise from the false claims Defendant made to the United States Department of Agriculture in an attempt to defraud the government of funds

69.     Defendant misrepresentations and omissions occurred in the context of a federally funded housing program and were made with knowledge of, and disregard of, applicable federal requirements.

70.     Defendant claimed that they would lease their Phase 1 Woodmark Apartment units to vulnerable farm workers in order to secure funds from the United States Department of Agriculture under the Off-Farm Labor Housing Loan Program. Defendant was aware that all Plaintiffs were not farm workers before any lease agreements were signed but  knowingly misrepresented to all Plaintiffs that they were eligible to obtain tenancy of Phase 1 apartments, despite the fact that they were not farm workers and were therefore not eligible.

71.     Defendant coerced and/or tricked all Plaintiffs, none of whom are farm-workers, into signing lease agreements intended for farmworkers, constituting a false record.

72.     Defendant failed to make the required genuine, good faith effort to reach out to Sonoma County's farmworker community with information about available units at Woodmark Apartments and the benefits available through the Off-Farm Labor Housing Program before leasing the apartments to non -farm workers, including plaintiffs. Defendant did so for financial gain from the USDA Off-Farm Labor Housing Loan Program .

73.     Defendant's actions garnered suspicions from other interested parties. In a letter dated November 19, 2025  former mayor and now councilmember Stephen Zollman requested "[c]opies of all California Tax Credit Allocation Committee (TCAC) regulatory agreements applicable to Woodmark Apartments, or the status of any pending regulatory agreements; Information regarding the status of any loans, grants or contractual agreements with the U.S.

Department of Agriculture (USDA), including copies of any active agreements or other materials that detail the obligations tied to those loans, such as any active eligibility restrictions."

## FIFTH CAUSE OF ACTION

### Solicitation to Commit Fraud

Plaintiffs reallege and incorporate by reference Paragraphs 1-53.

74. By way of a letter sent to all Woodmark tenants, including Plaintiffs, dated December 15, 2025 and titled, "NOTICE OF CHANGE OF TERMS OF TENANCY",  Aperto Regional Manager Danyel Higgins announced that "The terms of your tenancy will be modified to add and include the terms contained in the U.S.D.A. OFF-FARM LABOR HOUSING PROGRAM ADDENDUM attached to this Notice." Although tenants were encouraged to sign the Addendum, Higgins' wrote "[E]ven if you disagree with the new Farmworker Addendum, if you continue to live in the unit after this Notice goes into effect, then you are agreeing to it and will be bound by the new Farmworker Addendum, even if you do not sign it."

75. Numbered Paragraph 3 of the Addendum, "Eligibility Requirement" states, "Resident understands and agrees that, *in order to **remain** eligible* for housing at the Property, their household must include a domestic tenant or co-tenant farm laborer a retired domestic farm laborer or a disabled domestic farm laborer."

76. By requiring plaintiffs to state that they "***remain** eligible*" means that they would be falsely misrepresenting themselves as having been eligible at the time they signed the original lease when, in fact, Defendant knew they were not. Thus, so that it could continue to receive the millions of dollars in tax benefits under the USDA program, Defendant deviously and unlawfully

solicited and tried to induce plaintiffs to help in an attempt to defraud the United States government.

77.     Warning plaintiffs that refusal to be bound by the Addendum would mean giving up their housing and gratuitously threatening in the same letter "a negative credit report reflecting on your credit history may be submitted to a credit reporting agency" suggests an element of coercion undergirding Defendant's misconduct.

## SIXTH CAUSE OF ACTION

 (Americans with Disabilities Act (42 U.S.C. § 12101);  Fair Housing Act, Title VIII and IX of the Civil Rights Act of 1968  (Pub. L. 90–284, 82 Stat. 73); California Fair Housing and Employment Act (FEHA))

Plaintiffs reallege and incorporate by reference Paragraphs 1-53 above.

78.     The majority of Plaintiffs are afflicted with serious disabilities which have been aggravated, exacerbated and made worse by the emotional stress of imminent displacement and will be further aggravated, exacerbated and made worse if they are evicted and face the prospect of becoming homeless.

79.     When she applied for and obtained a lease at Woodmark Apartments, Plaintiff Melissa Page requested a ground floor unit as a reasonable accommodation under the Americans with Disabilities Act for a family member co- tenant which was unlawfully rejected by employees of Aperto Management, Defendant's property management and leasing agent who disputed that Plaintiff's son had a qualifying disability and unlawfully rejected Ms. Page's request out of hand without engaging in the interactive process required under the Americans With Disabilities Act.

80.     The apartments at TPC-owned "sister properties" allegedly offered by Defendant to former Woodmark Tenants facing eviction in exchange for unconscionable "Mutual" releases of

claims, do not include ADA compliant units, even though multiple Plaintiffs are disabled and require accommodations.

81.      In so acting, Defendant violated Americans with Disabilities Act (42 U.S.C. § 12101); Fair Housing Act, Title VIII and IX of the Civil Rights Act of 1968  (Pub. L. 90–284, 82 Stat. 73).

### SEVENTH CAUSE OF ACTION

(Negligent Misrepresentation (California Civil Code §§ 1710(2) and 1572(2))

By making false representations, false reassurances and concealing information regarding eligibility and related matters upon which Plaintiffs reasonably relied in applying for leases and renting units at Woodmark Apartments, Defendant violated California Civil Code Section 1710(2) ("The assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true[,]"

By making false representations, false reassurances and concealing information regarding eligibility and related matters upon which Plaintiffs reasonably relied in applying for leases and renting units at Woodmark Apartments, Defendant also violated California Civil Code Section 1572(2)  ("Actual fraud, within the meaning of this Chapter, consists in any of the following acts, committed by a party to the contract, or with his connivance, with intent to deceive another party thereto, or to induce him to enter into the contract:…The positive assertion, in a manner not warranted by the information of the person making it, of that which is not true, though he believes it to be true."

"To be actionable deceit, the representation need not be made with knowledge of actual falsity, but need only be an 'assertion, as a fact, of that which is not true, by one who has no

reasonable ground for believing it to be true' Civ.Code, s 1710 (2)" *Gagne v. Bertran* (1954) 43 Cal. 2d 481, 487.

## EIGHTH CAUSE OF ACTION

Negligent Infliction of Emotional Distress

Plaintiffs reallege and incorporate by reference Paragraphs 1-53 above.

81.     By engaging in the course of conduct described above, Defendant caused and continues to cause plaintiffs, and each of them, to suffer great anxiety and emotional distress with accompanying physical effects.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

## I.

Issue findings of fact and conclusions of law that Defendant committed the alleged violations.

## II.

Issue a declaratory judgment that the lease renewals offered to plaintiffs were unlawful and *void ab initio* because contained a prohibited material alteration by incorporating into the lease an Off-Farm Labor Housing Addendum that Defendant TPC knew, if signed by plaintiffs, would require them to falsely and fraudulently misrepresent themselves.

**III.**

Issue a mandatory injunction instructing Defendant and the appropriate agent(s), servant(s), employee(s) and attorney(s) to offer Plaintiffs a new lease with the same terms as those in the original leases signed on or about the end of 2024 and early 2025.

**IV.**

Issue a Temporary Restraining Order and judgment in a form consistent with Fed. R. Civ. P. 65(d), enjoining Defendant and his agents, servants, employees and attorneys and those persons in active concert or participation with any of them from prosecuting unlawful detainer actions against Plaintiffs and each of them alternatively, and to the extent any lease agreements are deemed voidable due to Defendant's above-described fraud, Defendant may not rely on such conduct to justify eviction or displacement of Plaintiffs.

**V.**

Order Defendant and his agents, servants, employees and attorneys and those persons in active concert or participation with any of them to comply with the requirements of the California Tenant Protection Act of 2019 (AB 1482) and City of Sebastopol Municipal Code Chapter 9.36 as they apply to Plaintiffs.

**VI.**

Issue a declaratory judgment that "Mutual Release of Claims and Voluntary Termination Agreement" that displaced former Woodmark tenants whose names are not yet know and herein identified as among the John Doe Plaintiffs 1-30 were made to sign are null and void as unconscionable contracts of adhesion and Order Defendant to offer rental agreements for units at

Woodmark Apartments to said displaced former Woodmark tenants containing the same terms as those in their original leases.

## VII.

Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure; Order Defendant The Pacific Companies to pay for Plaintiffs' reasonable attorneys' fees and costs and; grant plaintiffs such other and further relief as this.

Dated: April 30, 2026                    Respectfully submitted,

                                        _/s/ Anthony D. Prince_
                                         Anthony D. Prince,
                                         General Counsel
                                         California Homeless Union/
                                         Statewide Organizing Council
                                         Law Offices of Anthony D. Prince

                                         Attorneys for Plaintiffs

### VERIFICATION

I, MELISSA PAGE, am a founder and official representative of Woodmark Tenants United. I have read the foregoing complaint and know the contents therein to be true and correct. The same is true of my own knowledge, except as to those matters which are therein stated on information and belief, and, as to those matters, I believe it to be true.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct.

Dated: April 30, 2026                                    /s/ Melissa Page